## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| MARIA del CARMEN ESPARZA, | § | |
| Individually and as Next Friend of, | § | |
| MIGUEL ANGEL ESPARZA, a Minor, | § | |
| JUAN ESPARZA MANCILLA, a Minor, | § | |
| MANUEL ESPARZA-MANCILLA, a Minor, | § | |
| MELISSA ESPARZA MANSILLAS, a Minor, | § | |
| ROLANDO ESPARZA, a Minor, | § | |
| MICHELLE ESPARZA, a Minor, and as the | § | |
| Representative of the Estate of Manuel Esparza, | § | |
| Deceased, CANDELARIO ESPARZA, | § | |
| JAVIER ESPARZA, BRIGIDA CADENA, | § | |
| Individually and as Personal Representative | § | |
| of the Estate of J. MARCOS ESPARZA, | § | |
| CELIA MERCADO ESPARZA, | § | |
| Individually and as Representative of the | § | |
| Estate of MANUEL ESPARZA, Deceased | § | |
| and A/N/F of MANUEL ESPARZA | § | |
| MERCADO, a Minor, MANEOR ESPARZA | § | |
| ESPARZA and MA SANTOS ESPARZA | § | Case No. 4:05-CV-315 |
| ZAPATA, Individually and as | § | |
| Representatives of the Estates of | § | |
| JUAN MARCOS ESPARZA and | § | |
| GERMAN ESPARZA, Deceased, and | § | |
| A/N/F of GRISELDA ESPARZA, a Minor, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| EAGLE EXPRESS LINES, INC., | § | |
| KV EXPRESS, INC., MIROSLAW JANUSZ | § | |
| JOZWIAK, ILLINOIS NATIONAL | § | |
| INSURANCE COMPANY, CONTINENTAL | § | |
| CASUALTY COMPANY, and | § | |
| LEXINGTON INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFFS'

**JOINT MOTION FOR SUMMARY JUDGMENT AND DENYING IN PART
DEFENDANTS CONTINENTAL CASUALTY COMPANY, LEXINGTON
INSURANCE COMPANY AND ILLINOIS NATIONAL INSURANCE
COMPANY'S JOINT MOTION FOR SUMMARY JUDGMENT**

The following are pending before the court:

1.  Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's joint motion for summary judgment and brief in support (docket entry #74);

2.  Contractor Plaintiffs' joint response to carrier Defendants' joint motion for summary judgment (docket entry #108);

3.  Martin Plaintiffs' joinder in Contractor Plaintiffs' joint response to Carrier Defendants' joint motion for summary judgment (docket entry #109);

4.  Defendants Lexington Insurance Company, Continental Casualty Company and Illinois National Insurance Company's joint reply to Plaintiffs' response to Carrier Defendants' joint motion for summary judgment (docket entry #123); and

5.  Contractor Plaintiffs' sur-reply to the Carrier Defendants' joint motion for summary judgment (docket entry #127).

---

1.  Plaintiffs' joint motion for summary judgment and brief in support thereof (docket entry #'s 91 & 94);

2.  Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's response to Plaintiffs' joint motion for summary judgment and supplement to Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's joint motion for summary judgment (docket entry #110);

3.  Contractor Plaintiffs' amended joint reply brief to Carriers' response to Plaintiffs' joint motion for summary judgment (docket entry #130); and

4.  Carrier Defendants' joint sur-reply to Plaintiffs' reply to Carrier Defendants' response to Plaintiffs' motion for summary judgment (docket entry #128).

---

1.      Contractor Plaintiffs' joint motion to strike exhibits from Carriers' joint response and supplemental motion for summary judgment (docket entry #125);

2.      Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's response to Plaintiffs' joint motion to strike exhibits from Carriers' joint response and supplemental motion for summary judgment and, alternatively, motion for leave to supplement the record (docket entry #'s 134 & 135); and

3.      Plaintiffs' response to Carriers' response to Plaintiffs' joint motion to strike exhibits from Carriers' joint response and supplemental motion for summary judgment and, alternatively, motion for leave to supplement the record (docket entry #'s 156 & 157).

---

1.      Contractor Plaintiffs' motion to strike affidavits of Cline Young and Patricia Strickland and objections thereto (docket entry #147);

2.      Contractor Plaintiffs' first amended motion to strike affidavits of Cline Young and Patricia Strickland and objections thereto (docket entry #160);

3.      Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's response to Contractor Plaintiffs' amended motion to strike affidavits of Cline Young and Patricia Strickland and objections thereto (docket entry #167);

4.      Contractor Plaintiffs' reply to Carriers' response to Contractor Plaintiffs' motion to strike affidavits of Cline Young and Patricia Strickland and objections thereto (docket entry #172); and

5.      Illinois National's sur-reply to Contractor Plaintiffs' reply to Carriers' response to motion to strike the affidavits of Cline Young and Patricia Strickland and objections thereto (docket entry #179).

---

1.      Contractor Plaintiffs' motion to strike affidavit of Tina Jahn and objections thereto (docket entry #149);

2.      Continental Casualty Company's response to Contractor Plaintiffs' motion to strike affidavit of Tina Jahn and objections thereto (docket entry #166); and

3.      Contractor Plaintiffs' reply to Continental Casualty Company's response to Contractor Plaintiffs' motion to strike affidavit of Tina Jahn and objections thereto (docket entry #174).

———————————————

1.      Contractor Plaintiffs' motion to strike the response of Illinois National to the joinder of Eagle Express Lines, Inc. in part of Plaintiffs' summary judgment motion and to strike the affidavit of Harrison Yoss and objections thereto (docket entry #162);

2.      Illinois National's response to Contractor Plaintiffs' motion to strike the response of Illinois National to the joinder of Eagle Express Lines, Inc. in part of Plaintiffs' summary judgment motion and to strike the affidavit of Harrison Yoss and objections thereto (docket entry #171); and

3.      Contractor Plaintiffs' reply to Illinois National's response to Contractor Plaintiffs' motion to strike the response of Illinois National to the joinder of Eagle Express Lines, Inc. in part of Plaintiffs' summary judgment motion and to strike the affidavit of Harrison Yoss and objections thereto (docket entry #181).

———————————————

1.      Illinois National's motion to substitute the affidavit of Harrison H. Yoss in connection with its response to the joinder of Eagle Express Lines, Inc. in part of Plaintiffs' summary judgment motion (docket entry #175); and

2.      Contractor Plaintiffs' response to Illinois National's motion to substitute the affidavit of Harrison H. Yoss (docket entry #182).

———————————————

1.      Continental Casualty Company's motion for leave to file affidavit of Tina Jahn (docket entry #189);

2.      Contractor Plaintiffs' response to Continental Casualty Company's motion for leave to file affidavit of Tina Jahn (docket entry #192); and

3.      Continental Casualty Company's reply to Contractor Plaintiffs' response to Continental Casualty Company's motion for leave to file affidavit of Tina Jahn (docket entry #193).

———————————————

1.   Plaintiffs' motion for leave to file supplemental summary judgment evidence in support of motion for summary judgment and response to motion for summary judgment (docket entry #196);

2.   Martin Plaintiffs' joinder in Contractor Plaintiffs' motion to supplement Plaintiffs' joint motion for summary judgment (docket entry #200); and

3.   Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's response to Plaintiffs' motion for leave to file supplemental summary judgment evidence in support of motion for summary judgment and response to motion for summary judgment (docket entry #203).

---

1.   Contractor Plaintiffs' motion to supplement Plaintiffs' joint motion for summary judgment (docket entry #199); and

2.   Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's response to Plaintiffs' motion to supplement Plaintiffs' joint motion for summary judgment (docket entry #201).

The court will address the above-referenced motions in turn.

## OBJECTIONS, MOTIONS TO STRIKE AND MOTIONS TO SUPPLEMENT

### A.   DR. CLINE YOUNG

In response to the Plaintiffs' joint motion for summary judgment, the Carrier Defendants, for the first time, introduced the expert opinion of Dr. Cline Young. *See* Def. Resp. to Pl. Mtn. for Summ. Judg., Exhs. Y(1), Y(2) & Y(3). The Carrier Defendants also sought to supplement their motion for summary judgment with the same.

In his report, Dr. Young opines about the September 20, 2004 events which form the basis of this lawsuit. Although the facts of this case are more specifically set forth below, Dr. Young, in his March 15, 2006 report, provides the following opinions about the facts of this case:

> **2.      The time between the collision of the truck with the Expedition and the collision of the truck with the Pickup was approximately**

-5-

**0.1 ± 0.1 seconds with the collision between the truck and the pickup occurring first.** This time was calculated based on the points of impact between the vehicles, the separation distances associated with those points of impact, the angle at which the truck was crossing the roadway at the impacts and the speed of the truck. A computer simulation reflecting this analysis is attached. **Note: Some of these measurements were taken from a scaled drawing. More precise measurements are possible from the actual measured data itself. The author would like to have that data.**

3. **For all practical purposes, the two collisions can be considered to be simultaneous.** As can be seen from the data items wherein a combined perception / reaction time of 1.5 seconds is generally used in accident reconstruction, there is no possibility of Mr. Jozwiak responding to the collision of his truck with Mr. Esparza's pickup, regain control and then have a second collision with Ms. Martin's vehicle. 1/10th of a second is essentially the time span of a blink of the eye. Furthermore, besides the time needed for perception and reaction, there is additional time needed for driver controls to take effect on the motion of the vehicle.

Def. Resp. to Pl. Mtn. for Summ. Judg., Exh. Y(1).

The Carrier Defendants seek to introduce Dr. Young's report to show that the collisions occurred within approximately 1/10th of a second apart and that, as such, the collisions occurred virtually simultaneously. Additionally, the Carrier Defendants seek to introduce Dr. Young's report to demonstrate that Jozwiak could not have regained control of his truck between the two collisions.

The Plaintiffs object to the introduction of Dr. Young's report on several bases, most important of which is that Dr. Young's report is not based on an adequate factual foundation. The court agrees. In addition to the above-referenced remarks, Dr. Young further states in his report that he understands

. . . that discovery is still ongoing and thereby reserve[s] the right to alter or augment this report and the opinions contained within should additional information become available that warrants such action. More specifically, I would like to have the government documents containing the measurements of the vehicles and the accident

site in both printed and electronic formats.

Def. Resp. to Pl. Mtn. for Summ. Judg., Exh. Y(1).  Although Dr. Young, in a later filed affidavit, states that his conclusions and opinions are based on "all available measurements," Dr. Young did not mention any review of the actual measured data from the vehicles and the accident site.  Since Dr. Young specifically noted that more precise measurements were possible from the actual measured data and since there is no indication that Dr. Young reviewed such data, the court concludes that Dr. Young's report is not based on an adequate factual foundation.  Accordingly, the court declines to consider Dr. Young's report and hereby strikes it from the record.[1]

### B.    THE NTSB REPORT

The Carrier Defendants have further offered as summary judgment evidence the National Transportation Safety Board's ("NTSB") report.  The Plaintiffs object to the admission of the same because "[n]o part of a report of the [NTSB], related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report."  49 U.S.C. § 1154(b).  The Carrier Defendants argue, however, that the report was not offered for the truth of the matter asserted but, rather, to show that the NTSB referred to the events which transpired on September 20, 2004 as a single accident.  Since consideration of the NTSB report appears to be prohibited by statute, the court hereby declines to consider the same and strikes the report from the record.

--------

[1]The court notes, however, that even if it did consider Dr. Young's report, the result would not change.  Although Dr. Young's report indicates that the collisions were, for all practical purposes, simultaneous, Dr. Young's opinions reveal that the collisions were separated in time, albeit a short period of time.  As such, the fact remains that the collisions did not result from a simultaneous impact.

### C.    RESERVATION OF RIGHTS LETTERS AND EVIDENCE RELATED THERETO

In their joint motion for summary judgment and in their response to the Carrier Defendants'

motion for summary judgment, the Plaintiffs raised the affirmative defenses of waiver and estoppel.

The Plaintiffs argue that the Carrier Defendants waived (or are estopped from raising) their right to

assert that the events which transpired on September 20, 2004 resulted in a single accident.  As

discussed more fully below, the court concludes that the events which transpired on September 20,

2004 resulted in two accidents.  As such, it is not necessary for the court to reach the Plaintiffs'

affirmative defenses of waiver and estoppel.[2]   Accordingly, the court overrules the Plaintiffs'

objections to Exhibits Z and CC of the Carrier Defendants' response to the Plaintiff's joint motion

for summary judgment as moot.  Additionally, the court denies as moot all other motions related to

the affirmative defenses of waiver and estoppel.

### D.    SUPPLEMENTAL EVIDENCE

The Plaintiffs seek to supplement their summary judgment evidence with certain deposition

testimony which refutes the expert opinions of Dr. Young.  Since the court is not considering Dr.

Young's expert opinions, it is not necessary for the Plaintiffs to supplement their summary judgment

evidence with this additional testimony.  Likewise, it is not necessary for the Carrier Defendants to

supplement said deposition testimony with additional portions of the same.

### BACKGROUND

On September 20, 2004, Miroslaw Janusz Jozwiak ("Jozwiak") was driving a tractor-trailer

rig ("tractor-trailer") northbound on U.S. Highway 75 near Sherman, Texas.  KV Express, Inc.

---

[2]The court notes that resolution of the Plaintiffs' affirmative defenses of waiver and estoppel
cannot be accomplished via a motion for summary judgment because genuine issues of material fact have
been raised regarding the same.

("KV") owned the tractor while Eagle Express Lines, Inc. ("Eagle Express") owned the trailer. Jozwiak crossed the median on U.S. Highway 75 and collided with two vehicles traveling southbound on U.S. Highway 75.  Those two vehicles were a Ford F-150 pick-up truck ("the truck") and a Ford Expedition ("the Expedition").  Although it is unclear which vehicle was first impacted by the tractor-trailer, the resolution of that issue is not relevant to the determination of the issues currently before the court.

It is clear, however, that the tractor-trailer (apparently, the trailer portion of the rig) collided with the truck while the truck was traveling southbound in the left lane.  Of the seven individuals traveling in the truck, five were fatally injured.  The two survivors were seriously injured.

It is also clear that the tractor-trailer (apparently, the tractor portion of the rig) collided with the Expedition while the Expedition was traveling southbound in the right lane.  At some time after impact, the Expedition and tractor, as well as a portion of the trailer, burst into flames.  Five individuals were traveling in the Expedition; none survived.  Jozwiak survived with minimal injuries.

At the time of the September 20, 2004 events, Illinois National Insurance Company provided truckers' liability insurance coverage to KV (the "Illinois National Policy") under policy number SFT165302601.  The Illinois National Policy provides $1,000,000 in primary coverage for each "accident."

Additionally, Continental Casualty Company provided truckers' liability insurance coverage to Eagle Express (the "Continental Casualty Policy") under policy number 0 1080827873.  The Continental Casualty Policy provides for $1,000,000 in coverage for each "accident."

Finally, Lexington Insurance Company provided excess insurance coverage to Eagle Express

(the "Lexington Policy") under policy number 3167729.   The Lexington Policy provides for

$1,000,000 in coverage for each "occurrence."  In this declaratory judgment action, the parties seek

a declaration under the terms of the insurance policies as to whether the events which transpired on

September 20, 2004 involved one or two accidents / occurrences.[3]

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims

or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper

if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A dispute about a material fact

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all

reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey*

*Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations

omitted). The substantive law identifies which facts are material.  *See id.* at 248.

The party moving for summary judgment has the burden to show that there is no genuine

issue of material fact and that it is entitled to judgment as a matter of law.  *See id.* at 247.  If the

movant bears the burden of proof on a claim or defense on which it is moving for summary

---

[3]Additionally, in the event the court concludes that the September 20, 2004 events involved a single accident / occurrence under the terms of the insurance policies, the Plaintiffs seek a declaration that the MCS-90 endorsements contained within the primary insurance policies provide for either $1,000,000 per judgment or, in the alternative, that the endorsements require a finding of two distinct collisions.  Since the court concludes that the plain language of the policies mandates a finding of two accidents / occurrences, the court need not reach the issues concerning the MCS-90 endorsements.

judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

## CHOICE OF LAW

In the Carrier Defendants' motion for summary judgment, the Carrier Defendants refer the court to both Texas law and Illinois law. The Carrier Defendants argue that this court should apply Illinois law because, under the most significant relationship test, the insurance policies at issue were purchased by, and issued to, the insureds in Illinois. Accordingly, the Carrier Defendants reason that "Illinois law applies to the interpretation of the insurance policies at issue, as Illinois bears the most significant relationship to such policies." Def. Reply, p. 2, ¶ 2. The Carrier Defendants note, however, that since both Illinois and Texas apply the same analysis to determine whether the events herein involve one accident or two, the results would be the same under both states' laws.

"'If the laws of the states do not conflict, then no choice-of-law analysis is necessary.'" *Schneider National Transport v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002), quoting *W.R. Grace and Co. v. Continental Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990); *National Union Fire Ins. v. CNA Ins. Companies*, 28 F.3d 29, 32, n. 3 (5th Cir. 1994). Accordingly, in this diversity suit, the law of the forum state, Texas, should apply here because there is no conflict between the substantive

state law of Texas and Illinois.  *See Schneider National Transport*, 280 F.3d at 536.

## <u>DISCUSSION AND ANALYSIS</u>

"A contract of insurance is generally subject to the same rules of construction as other contracts."  *H.E. Butt Grocery Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 150 F.3d 526, 529 (5th Cir. 1998) (citation omitted).  "The court's primary concern is to give effect to the written expression of the parties' intent."  *Id*. (citation omitted).  "If the written contract is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and will be enforced as written."  *Id*. (citation omitted).

"If the court is uncertain as to which of two or more meanings was intended, a provision is ambiguous."  *Id*. (citation omitted).  "An ambiguity in a contract is either 'patent' or 'latent.'"  *Id*. (citation omitted).  "'A patent ambiguity is evident on the face of the contract.  A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter.'"  *Id*., quoting *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).  "Only after a court has determined a contract is ambiguous can it consider the parties' interpretations."  *Id*. (citation omitted).  "When a contract is not ambiguous, the court will construe the contract as a matter of law."  *Id*. (citation omitted).

The outcome of this case depends on the meaning of "accident" and "occurrence" as defined by the policies herein.  *See H.E. Butt Grocery Co.*, 150 F.3d at 529.  The Carrier Defendants argue that the plain language of the polices results in a finding of one accident or occurrence.  Conversely, the Plaintiffs contend that the plain language of the policies results in a finding of two accidents or occurrences.  Alternatively, the Plaintiffs argue that the policies' provisions are ambiguous;

accordingly, the court should interpret the ambiguity in favor of coverage and find two accidents or

occurrences as a matter of law.

The Lexington Policy provides coverage as follows:

I.    <u>COVERAGE</u>

      A.      We will pay on behalf of the Insured that portion of the loss which the Insured will become legally obligated to pay as compensatory damages (excluding all fines, penalties, punitive or exemplary damages) by reason of exhaustion of all applicable underlying limits, whether collectible or not, as specified in Section II of the Declarations, subject to:

              1.      the terms and conditions of the underlying policy listed in Section IIA of the Declarations, AND

              2.      our Limit of Liability as stated in Section 1C of the Declarations.

_____

III.    <u>LIMITS OF LIABILITY</u>

      A.     <u>Aggregate</u>

          This policy is subject to an aggregate limit of liability as stated in the Declarations.  This aggregate limit of liability is the maximum amount which will be paid under this policy for all losses in excess of the underlying policy limits occurring during the policy period, except automobile liability for which there is no applicable aggregate limit of liability.

      B.     <u>Occurrence Limit</u>

          Subject to the above provision respecting aggregate, the Limit of Liability stated in the Declarations as per occurrence is the total limit of our liability for ultimate net loss including damages for care, loss of services or loss of consortium because of personal injury and property damage combined, sustained by one or more persons or organizations as a result of any one (1) occurrence.

C.     Limit Exhaustion

This policy shall cease to apply after the applicable limits of liability have been exhausted by payments of defense costs and / or judgments and / or settlements.

In the event of exhaustion of the aggregate limits of liability of the underlying insurance as stated in Section II of the Declarations, this policy will continue in force as underlying insurance.

The aggregate limits of the underlying insurance will only be reduced or exhausted by payment of claims that would be insured by this policy.

Def. Jt. Mtn. for Summ. Judg., Exh. A, pp. 1-2.  The Lexington Policy defines "occurrence" as follows:

The word occurrence means an event, including continuous or repeated exposures to conditions, neither expected or intended from the standpoint of the Insured.  All such exposure to substantially the same general conditions shall be deemed one occurrence.

*Id*. at 4.

The Continental Casualty Policy and the Illinois National Policy provide coverage as follows:

**SECTION II – LIABILITY COVERAGE**

**A.     Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

_____

**C.     Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined,

> resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.
>
> All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

*Id*. at Exh. B, pp. 2, 5; Exh. C, pp. 2, 5-6.  The Continental Casualty Policy and the Illinois National Policy define "accident" as follows:

> "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

*Id*. at Exh. B, p. 10, § VI(A), Exh. C, p. 11, § VI(A).

Here, none of the parties primarily contend that the terms "accident" and "occurrence" as defined by the policies are ambiguous.[4]  *See U.E. Texas One-Barrington, Ltd., v. General Star Indemnity Co.*, 332 F.3d 274, 277 (5th Cir. 2003).  Further, the parties do not argue that the court's determination of the number of accidents or occurrences hinges on the resolution of a factual dispute. *See id*.  Accordingly, "Texas courts agree that the proper focus in interpreting 'occurrence' is on the events that cause the injuries and give rise to the insured's liability, rather than on the number of injurious effects." *H.E. Butt Grocery Co.*, 150 F.3d at 530, quoting *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F.2d 204, 206 (5th Cir. 1971).

In *H.E. Butt Grocery Co.*, an insurance coverage dispute arose from an H.E. Butt Grocery Company's ("HEB") employee's sexual abuse of two children in an HEB store.  *H.E. Butt Grocery Co.*, 150 F.3d at 528.  An HEB employee sexually assaulted two different children approximately one week apart in the restroom of an HEB store.  *Id*.  Litigation ensued which subsequently led to HEB seeking a declaratory judgment against National Union Fire Insurance Company.  HEB argued

---

[4]Again, the court notes that the Plaintiffs seek a finding of ambiguity only in the alternative.

that each instance of sexual abuse arose from the same "occurrence", i.e., HEB's negligence in overseeing its pedophilic employee. *Id*. Conversely, National Union Fire Insurance Company argued that the two separate instances of sexual abuse constituted two occurrences under the policy. *Id*. The policy defined "occurrence" as follows:

> "Occurrence" means an event, including continuous or repeated exposure to conditions, which result[s] in Personal Injury or Property Damage during the policy period, neither expected nor intended from the standpoint of the Insured. All Personal Injury or Property Damage arising out of the continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

*H.E. Butt Grocery Co.*, 150 F.3d at 529. The court concluded that "the two independent acts of sexual abuse 'caused' the two children's injuries and gave rise to HEB's separate and distinct liability in each case." *Id*. at 531.

Likewise, in *Maurice Pincoffs Co.*, *supra.*, an insurance coverage dispute arose from the sale of contaminated birdseed. *Maurice Pincoffs Co.*, 447 F.2d at 205. Maurice Pincoffs Company imported 110,000 pounds of canary seed from Argentina. *Id*. The birdseed was sold in the original 110 pound bags to eight different feed and grain dealers in Texas and Oklahoma. *Id*. The dealers, in turn, sold the birdseed to bird owners. *Id*. The birdseed, apparently contaminated with a chemical insecticide toxic to birds, killed many birds. *Id*. Litigation ensued which eventually led to a declaratory judgment action. The central issue was whether there was one "occurrence" of liability or more than one "occurrence" of liability under the insurance policy at issue. *Id*. at 206. The policy defined "occurrence" as follows:

> "Occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

*Id*. In finding that there was more than one occurrence of liability, the court reasoned as follows:

> We think that the 'occurrence' to which the policy must refer is the occurrence of the events or incidents for which Pincoffs is liable. It was the sale of the contaminated seed for which Pincoffs was liable. Although the cause of the contamination is not clear, it seems apparent that Pincoffs received the seed in a contaminated condition and did not itself contaminate the seed. However, it was not the act of contamination which subjected Pincoffs to liability. If Pincoffs had destroyed the seed before sale, for instance, there would be no occurrence at all for which the insured would be liable. But once a sale was made there would be liability for any resulting damages. It was the sale that created the exposure to 'a condition which resulted in property damage neither expected nor intended from the standpoint of the insured,' under the definition of the policy. And for each of the eight sales made by Pincoffs, there was a new exposure and another occurrence.

*Id*.

Moreover, in *Liberty Mutual Ins. Co. v. Rawls*, 404 F.2d 880 (5th Cir. 1968), the single question presented to the court was whether the insured had been involved in one accident or two accidents. As the insured was proceeding north upon a public highway at a high rate of speed, he collided with the left rear of a northbound automobile and knocked it off the highway to the right. *Id*. The insured continued northerly, veering across the centerline and collided head-on with a southbound automobile. *Id*. The impacts were separated by both time (two to five seconds) and distance (30 to 300 feet apart). *Id*. In finding as a matter of law that there were two accidents, the court reasoned as follows:

> There were two distinct collisions, or more than a single sudden collision. There is no evidence that the [insured's] automobile went out of control after striking the rear end of appellees' automobile. On the contrary, the only reasonable inference is that [the insured] had control of his vehicle after the initial collision.

*Id*. at 880.

Here, the Carrier Defendants argue that both the truck and the Expedition were exposed to continuous or repeated exposure to the same condition, that is, Jozwiak crossing the median into the

southbound lanes of U.S. Highway 75.   The Carrier Defendants contend that the tractor-trailer

crossed into southbound traffic in one continuous event.   The Carrier Defendants further argue that

the evidence does not indicate that the tractor-trailer stopped and then started again, nor does the

evidence indicate that Jozwiak lost control of the tractor-trailer and then subsequently regained

control.   The Carrier Defendants apply the following reasoning:

> There is no evidence showing that Jozwiak regained control between the two
> collisions.  In fact, as the entire accident occurred within seconds, . . ., it would have
> been impossible for Jozwiak to regain control after hitting the Expedition and before
> hitting the pickup truck.
>
> Based on the distance between the cars in the southbound lanes prior to the
> first collision, the rapid succession of the collisions and the absence of any evidence
> showing that Jozwiak ever regained control of the tractor-trailer after the first
> collision, . . ., this Court must find that there was only one accident / occurrence. . .
> The collisions in this case resulted from the same cause – namely, a tractor-trailer
> that struck two cars before coming to rest.  Thus, under the terms of the insurance
> policies at issue, there was a single accident / occurrence.

Def. Jt. Mtn. for Summ. Judg., p. 13.[5]

The court concludes that the Carrier Defendants' arguments are over-reaching.  First, as

likened to the facts of *Maurice Pincoffs*, if the tractor-trailer had crossed the median into the

southbound lanes of traffic but there were no oncoming vehicles, then the insureds would not be

subject to liability.   Under the theory propounded by the court in *Maurice Pincoffs*, it was each

collision in the instant case that created the continuous or repeated exposure to the same, or

substantially the same, conditions, not the fact that the tractor-trailer crossed the median.  Second,

it is clear that each collision occurred independently.  Regardless of which collision occurred first,

---

[5]The Carrier Defendants have provided the court with numerous newspaper articles which refer
to the events which transpired on September 20, 2004 as a single accident.  The court notes, however,
that the authors of those articles were not construing the terms of the insurance policies herein.

the collision between the tractor-trailer and the truck did not cause or affect the collision between the tractor-trailer and the Expedition. The truck's collision with the tractor-trailer did not cause the truck to spin out of control into the Expedition. Likewise, the Expedition's collision with the tractor-trailer did not cause the Expedition to spin out of control into the truck. Similarly, neither the truck's nor the Expedition's collision with the tractor-trailer caused the tractor-trailer to lose control and collide with any other vehicle. In following the teachings of *H.E. Butt Grocery Co.*, the court must conclude that each individual collision with the tractor-trailer created the continuous or repeated exposure to the same, or substantially the same, conditions. *See H.E. Butt Grocery Co.*, 150 F.3d at 533. Finally, as in *Rawls*, the collisions were separated by both time and distance. All of the foregoing leads the court to the conclusion that, as a matter of law, the events which transpired on September 20, 2004 resulted in two separate accidents or occurrences. The court reaches this conclusion by looking to the events that caused the injuries and gave rise to the insureds' liability, not to the number of injuries or the number of victims. *H.E. Butt Grocery Co.*, 150 F.3d at 535.[6]

## CONCLUSION

Based on the foregoing, the court concludes as follows:

1.    Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's joint motion for summary judgment and brief in support (docket entry #74) is **DENIED IN PART**;

2.    Plaintiffs' joint motion for summary judgment and brief in support thereof (docket entry #'s 91 & 94) is **GRANTED IN PART**;

---

[6]In the Plaintiffs' joint motion for summary judgment, the Plaintiffs raise the issue that the Carrier Defendants appear to contend that the policy limits have been exhausted as a result of a settlement reached with certain Plaintiffs. The court, however, denied the motion to approve that settlement. Furthermore, the policies state that exhaustion occurs upon payment of any judgments or settlements. Since the court has neither approved any settlements nor entered any judgments, the policy limits have not yet been exhausted.

3.      Contractor Plaintiffs' joint motion to strike exhibits from Carriers' joint response and supplemental motion for summary judgment (docket entry #125) is **GRANTED IN PART**;

4.      Defendants Continental Casualty Company, Lexington Insurance Company and Illinois National Insurance Company's motion for leave to supplement the record (docket entry #135) is **DENIED**;

5.      Contractor Plaintiffs' motion to strike affidavits of Cline Young and Patricia Strickland and objections thereto (docket entry #147) and Contractor Plaintiffs' first amended motion to strike affidavits of Cline Young and Patricia Strickland and objections thereto (docket entry #160) are **GRANTED IN PART**;

6.      Contractor Plaintiffs' motion to strike affidavit of Tina Jahn and objections thereto (docket entry #149) is **DENIED AS MOOT**;

7.      Plaintiffs' motion for leave to supplement the record (docket entry #156) is **DENIED**;

8.      Contractor Plaintiffs' motion to strike the response of Illinois National to the joinder of Eagle Express Lines, Inc. in part of Plaintiffs' summary judgment motion and to strike the affidavit of Harrison Yoss and objections thereto (docket entry #162) is **DENIED AS MOOT**;

9.      Illinois National's motion to substitute the affidavit of Harrison H. Yoss in connection with its response to the joinder of Eagle Express Lines, Inc. in part of Plaintiffs' summary judgment motion (docket entry #175) is **DENIED AS MOOT**;

10.     Continental Casualty Company's motion for leave to file affidavit of Tina Jahn (docket entry #189) is **DENIED AS MOOT**;

11.     Plaintiffs' motion for leave to file supplemental summary judgment evidence in support of motion for summary judgment and response to motion for summary judgment (docket entry #196) is **DENIED**; and

12.     Contractor Plaintiffs' motion to supplement Plaintiffs' joint motion for summary judgment (docket entry #199) is **DENIED**.

**SIGNED this the 27th day of March, 2007.**

_Richard A. Schell_
RICHARD A. SCHELL
-20-        UNITED STATES DISTRICT JUDGE